

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00554-CV

**IN THE INTEREST OF I.G.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01987
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  January 17, 2018

AFFIRMED

Crystal[1] appeals the trial court's judgment terminating her parental rights to her daughter,

I.G. (born in 2004). She argues the trial court erred by considering a published article that was not

admitted into evidence and that insufficient evidence supports the trial court's findings on the

statutory grounds to terminate her parental rights. We affirm the trial court's judgment.

### BACKGROUND

In September 2016, the Department of Family and Protective Services removed I.G. based

on a referral alleging Crystal is a drug addict and had instructed I.G. to shoplift to acquire items

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents are referred to by their first names and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

Crystal could sell to buy drugs. The Department filed a petition seeking conservatorship of I.G. and to terminate the parental rights of Crystal and I.G.'s father, Michael.

In June 2017, the case proceeded to a jury trial at which Michael, Crystal, and the Department's caseworkers Cynthia Suarez and Ashley Braswell testified. Michael testified briefly; he stated he is incarcerated for capital murder, had not complied with court-ordered provisions of his family service plan, and is voluntarily relinquishing his parental rights.

Crystal testified she is in jail for theft of a vehicle and possession of a controlled substance. She stated she was incarcerated in January 2017 and was released briefly before her bond was "pulled" for a failure to appear, and she returned to jail approximately a month before trial. Crystal also stated domestic violence occurred during her relationship with Michael, and although she had worked in the medical field to support her six children, she was unable to support I.G. while she was in jail. She also testified I.G. texted her during the case and said she had been cutting herself.

Crystal also testified the Department had not provided her with a copy of her family service plan, but she was informed she "had to do counseling and parenting." She further testified she did not complete any services on her family service plan before she went to jail in January 2017. Crystal explained, "The caseworker I had wouldn't listen to anything I would say at the time. She didn't have any children, so I don't even know how she could relate to anything I was trying to tell her." Crystal stated that after she went to jail, she was able to complete only a parenting course.

Suarez testified she explained to Crystal all of the family service plan requirements and Crystal seemed to understand those requirements. Suarez stated she informed Crystal of the requirements for drug and psychological assessments, drug testing, maintaining stable employment and housing, participating in individual counseling, and completing a domestic violence class. According to Suarez, Crystal satisfied none of those requirements during the several

months before she was incarcerated. Suarez also testified she did not give Crystal a copy of her family service plan.

Braswell testified she was the investigating caseworker assigned before the Department filed suit. She testified Crystal initially denied having a drug problem, but Crystal admitted she used heroin and morphine when Braswell confronted her with positive drug test results.

After the parties rested and presented closing arguments, the trial court discussed the case history and the witnesses' testimony. Commenting on the testimony that I.G. was cutting herself, the trial court attributed I.G.'s stress to Crystal's conduct, stating:

> Let me tell you what [P]sychology [T]oday says why adolescents cut. Cutting is a way some teen adolescents try to cope with the pain of strong emotions, intense pressure or upsetting relationship problems. They may be dealing with feelings that seem too difficult to bear or bad situations that they think they can't change. Some people cut because they feel desperate for relief from bad feelings.

The trial court signed a final judgment, terminating Michael's parental rights. The trial court also terminated Crystal's rights, finding four grounds for termination and that termination of her parental rights is in I.G.'s best interest. Only Crystal appealed.

## IMPROPER CONSIDERATION OF A PUBLISHED ARTICLE

Crystal complains the trial court erred by considering the *Psychology Today* article about cutting. Crystal notes she did not raise an objection in the trial court. Generally, a party that fails to make a timely and specific objection in the trial court has not preserved the complaint for appellate review. TEX. R. APP. P. 33.1(a)(1). Crystal acknowledges this general rule, but argues she was not required to preserve her complaint for appellate review because the trial court deprived her of due process and committed fundamental error, which need not be preserved.

In support of her position, Crystal relies on *In re B.L.D.*, 113 S.W.3d 340 (Tex. 2003). In *In re B.L.D.*, the supreme court held the fundamental error doctrine that applies to charge error in criminal cases does not apply in parental-rights termination cases. *Id.* at 351. With regard to due

process concerns, the supreme court stated it "presume[s] that our rules governing preservation of error in civil cases comport with due process." *Id.* at 352. To determine whether this presumption is overcome in a proceeding regarding the termination of parental rights, we consider the following factors: "(1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedures used." *Id.* In very narrow circumstances, such as when a parent receives ineffective assistance of counsel, these factors may overcome the presumption that our error-preservation rules comport with due process. *Id.* at 354-55.

Reciting these factors, Crystal asserts that because the presumption that our procedural rules comply with due process can be overcome in some cases, "surely [due process] requires the review of the unobjected-to judicial conduct such as occurred here." Crystal does not address how the above-quoted factors apply in this case or argue why those factors outweigh the presumption that our rules regarding error preservation comport with due process. Furthermore, Crystal does not argue her counsel was ineffective by failing to object to the trial court considering the *Psychology Today* article. In sum, Crystal has not demonstrated this case falls within the narrow circumstances under which we may review unpreserved error. *See id.* at 351-55.

### SUFFICIENCY OF THE EVIDENCE

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio

2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable credibility determinations. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

If a trial court finds termination of a parent's rights is in the child's best interest, an order terminating parental rights may be supported by a finding of only one of the grounds for termination listed in section 161.001(b)(1) of the Texas Family Code. TEX. FAM. CODE. ANN. § 161.001(b)(1) (West Supp. 2017); *accord In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In addition to finding that termination of Crystal's parental rights is in I.G.'s best interest, the trial court found four grounds for termination under section 161.001(b)(1): endangerment by conduct, endangerment by conditions or surroundings; constructive abandonment; and failure to comply with court-ordered provisions of her family service plan. *See* § 161.001(b)(1)(D) (E), (N), (O). Crystal does not challenge the trial court's best-interest finding, but challenges the sufficiency of the evidence to support all four of the trial court's findings of grounds for termination.

Subsection (O) provides a ground for termination when a parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *Id.* § 161.001(b)(1)(O); *see In re E.C.R.*, 402 S.W.3d 239, 248-49 (Tex. 2013).

Crystal does not argue there is insufficient evidence of any of subsection (O)'s elements,[2] and instead contends the evidence establishes she is excused from complying with court-ordered provisions of her family service plan. Crystal argues the evidence establishes: (1) the Department failed to provide her with a copy of her family service plan; (2) she was informed that she must attend only individual counseling and a parenting course and did not comply with those requirements before she was incarcerated because her caseworker "never met with her in-person and wouldn't listen to anything she would say"; and (3) only a parenting course was offered where she was incarcerated, and she completed the parenting course. Crystal argues her parental rights may not be terminated under subsection (O) because she was not provided with her family service plan at a time when she had the opportunity to comply with the family service plan.

The evidence shows Crystal had a reasonable opportunity to comply with the court-ordered provisions of her family service plan. The Department did not provide Crystal with a copy of her family service plan, but Crystal testified she was informed her plan required her to attend individual counseling, which she admitted she did not do. There is also evidence showing that several months before her incarceration, Crystal was informed about and understood all of her family service plan requirements, but did not comply with those requirements before she was

---

[2] We also note there is sufficient evidence of each of subsection (O)'s elements.

incarcerated. Suarez testified Crystal had several months to comply with her family service plan before she was incarcerated. Crystal explained she did not comply with her family service plan because her caseworker did not have any children and would not listen to her.

We hold a reasonable factfinder could have formed a firm belief or conviction that Crystal failed to comply with the court-ordered provisions of her family service plan, as required by subsection (O). *See In re J.F.C.*, 96 S.W.3d at 266. To the extent subsection (O) requires a parent to have a reasonable opportunity to comply with her family service plan requirements, the evidence shows Crystal had such an opportunity. Because Crystal does not challenge the trial court's best-interest finding and only one ground for termination is necessary to support an order terminating parental rights under section 161.001, we need not address Crystal's arguments that the trial court's findings on the other statutory grounds are supported by insufficient evidence. *See In re A.V.*, 113 S.W.3d at 362.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice