**Opinion filed January 28, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00204-CV

_____

## IN THE INTEREST OF S.L.S., A CHILD

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. CV08670**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of S.L.S.'s parents. The mother filed an appeal. In a single issue on appeal, she challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding. We affirm.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether

a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, and had failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain the return of the child. *See id.* § 161.001(b)(1)(D), (E), (O). Appellant does not challenge these findings, but she does challenge the trial court's finding that termination is in the child's best interest. *See id.* § 161.001(b)(2). Accordingly, we will uphold the order of termination if the evidence is sufficient to support the best interest finding.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the

programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record in this case reflects that the Department of Family and Protective Services became involved with S.L.S. when he was less than two weeks old. During an investigation of a reported concern related to the baby's health, the Department determined that S.L.S. was very lethargic, had a bad case of thrush, and was too skinny. S.L.S. weighed 6.5 pounds at birth; at eleven days old, he had lost over 30% of his body weight and weighed only 4.5 pounds. However, neither parent was concerned about S.L.S.'s apparent health problems at that time. The Department's investigator believed that S.L.S. needed to be taken to a hospital immediately. The investigator took S.L.S., along with Appellant, to the emergency room at Cook Children's Hospital. S.L.S. was admitted to the hospital and was treated for severe thrush and severe malnutrition. S.L.S. gained weight while at the hospital.

The trailer home in which the family lived at the time of removal was in poor condition. It had broken windows and holes in the floor, and it was hot inside—as only one bedroom had a window unit. Additionally, there was no food in the house other that a box of pancake mix and rotten milk.

The evidence showed that Appellant complied with some, but not all, of the provisions of her court-ordered service plan. In this regard, the use of drugs by Appellant did not seem to be an ongoing problem, although Appellant did test positive for methamphetamine at the time of removal. Appellant, however, denied

ever using methamphetamine. Appellant was aware that S.L.S.'s father had a criminal history, had been "locked up" for six years, and was on parole. The father tested positive for methamphetamine and amphetamine while this case was pending. After she ended her relationship with the baby's father, Appellant engaged in a relationship and moved in with a man who was under indictment for the offense of sexual assault of a child. The record reflects that Appellant did not have a car or a driver's license, that her housing situation was tenuous, and that the Department had concerns about how Appellant "would do on her own" because she had not demonstrated an ability to provide a healthy, stable home environment or a stable job. Appellant did, however, regularly attend visitation with S.L.S. while this case was pending.

Not long after removal, the Department placed S.L.S. in a foster home; he remained in that same foster home at the time of trial. The foster parents would like to adopt S.L.S. if possible. S.L.S. is doing well in that home and has bonded with his foster parents. The record reflects that the foster parents are able to meet all of S.L.S.'s current and future needs, including some special needs. The optic nerve in S.L.S.'s left eye never developed, and he is permanently blind in that eye. A portion of S.L.S.'s brain, the septum pellucidum, is also absent.

The conservatorship caseworker testified that the Department's plan for S.L.S. was termination of the parents' parental rights and adoption by the foster parents. The caseworker believed that termination of Appellant's rights would be in S.L.S.'s best interest. The child's guardian ad litem informed the trial court that Appellant's judgment was poor, that she believed Appellant's judgment would continue to be poor, and that the child would not be safe with Appellant. The child's attorney ad litem recommended that the trial court terminate Appellant's parental rights.

Appellant did not agree with these assessments; she did not want her parental rights to be terminated and did not believe that it would be in S.L.S.'s best interest to do so. She believed that "a child can bond better with the actual parents and stuff." Although she admitted at trial that she had endangered S.L.S. prior to the removal, she believed that she had learned how to be a better parent.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in the child's best interest for Appellant's parental rights to be terminated. We hold that the evidence is legally and factually sufficient to support the trial court's best interest finding. We overrule Appellant's sole issue on appeal.

We affirm the trial court's order of termination.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

January 28, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.